We have four matters this morning and the first one is number 19-3241 Yale v. Warden Monmouth County Correctional Institution et al. Messrs. Lussberg and Sampat. Mr. Lussberg. Thank you Judge Ambrose. Good morning and may it please the court. My name is Lawrence S. Lussberg from the law firm of Gibbons PC. On behalf of the No problem at all. Thank you your honor. This case your honors asks the question whether it is appropriate to detain an individual pending removal potentially for months or even years without giving him the opportunity to show that he will never in fact be ordered removed. In so doing the case goes really to the very heart of the liberty that due process protects. So this is a question that I think is really important to answer. The question is whether a person fits within 1226C. What standard do you want us to adopt in order to assess that question? Your honor there's actually two questions and the one you asked is only part of it. So the first question is whether a person fits within 1226C. And the second question is whether even if they do they should have the right to raise the question about whether they will ultimately be deported because they will have the opportunity and will potentially likely obtain either cancellation or removal or adjustment under the relevant statutory provisions. That means that they will never actually be removed or deported. That really fundamentally your honor is the a standard that is that if a if a if a detainee under those circumstances has a substantial argument that they will not be removed that they then are entitled to a bond hearing. Not that they would be released but at that point they would be entitled to a bond hearing at which their risk of flight and or danger to the community can be considered. That is the standard that we propose and it's a standard Judge Ambrose that we don't make up out of whole cloth. It's a standard that we derive from the criminal bail from the Bail Reform Act. I can't believe I call it the Bail Reform Act after all these years it was 1984. But anyway under our bail statutes that makes clear that for bail pending appeal that what a court assesses in addition to risk of flight and danger to the community is whether a defendant under those circumstances has a substantial argument. It was also a position that I believe was espoused by Justice Breyer and Judge Tashima on the 9th circuit is that correct? That's correct your honor that is correct so so that's another way in which we're not making it up out of whole cloth. But wasn't that rejected by the majority? I mean to the extent the the more majority was unwilling to take that on and and we're looking at for in terms of analogies things like you know pre-trial detention or even parole replication hearings seem closer. Why wouldn't we be looking at a a probable cause standard with the burden as it typically is where there's a deprivation of liberty on the government? So your honor let me first address your point about DeMoor. You're right of course that the majority in DeMoor did not adopt that position nor however did the majority in DeMoor even opine on the question that's before this court today. Did anyone other than Justice Breyer espouse that position? I don't believe so your honor but I think that's correct yeah he's the only one. But but but but the issue really was not presented by DeMoor and DeMoor says that. One of the things that DeMoor clearly says is that the appropriate standard for these so-called Joseph hearings is one that it was not going to confront in that context. It simply wasn't going to deal with it and this court in Diop has likewise said that that DeMoor did not resolve that question. So that's the first the answer to your first part of your question Judge Krauss. With regard to the second part of your question which has to do with burdens obviously the burden we we quarrel with the burden that's set forth in Joseph which is one that's imposed upon the detainee but our bigger quarrel and I just want to focus because there's a lot of issues in this case but our bigger our bigger quarrels is with the idea that one has no opportunity to even advance the argument that at the end of the day he or she will not be deported that that undermines the whole purposes of detention and we know from that the Constitution requires that in in cases of detention the most fundamental of all liberty interests are at stake and the procedural protections to which one is entitled should be should be very great. But what do we do with the language in DeMoor and Jennings and Priop that that anticipates that the ultimate decision about removal is yet to be made and anticipates the the possibility that a a petitioner will not be removed? Yes so let me be clear about that. There's two arguments that we advance one of which is that that language is ambiguous and I'll come back to that in a second but your honor our more fundamental point is that as a matter of procedural due process it is simply unconstitutional to not allow a person who's going to be detained for potentially months or years to not even advance an argument that he or she will ultimately never be deported that that in in in you know the the government makes the argument that that would require you know mini hearings or whatever to peek into the merits. You know courts are in my experience really good at that. They do it in the bail context initially when they look at the merits of the case to decide whether someone's going to be released if they are required to look at the the strength of the evidence I think is the phrase. They do it on for bail pending appeal when they decide whether there's a substantial issue. They do it in the preliminary injunction context when they decide whether there's a likelihood of success in the merits. Then they peek at the merits as a immigration judges can do this. Indeed they do it already um in the context of determinations as to whether detention is too prolonged. One of the things they look at is the ultimate merits but to your point you know your point goes to the question of what is in the statute. We we as I said take we say that the statute is ambiguous but even if it isn't even if the statute stands clearly for the idea that those types of arguments cannot be made then it violates the process. Then it is a fundamental constitutional question and you know the government in their brief skillfully tries to make this into a question of strictly a statutory interpretation. It isn't. It's a matter of the respectfully of constitutionality. Would your suggested test substantial question? What do you mean by substantial? Your honor we don't define that and of course this court doesn't actually have to either because what it could do if it were to strike down the statute thing would be up to the other branches of government to to set forth what the appropriate standard is. But but but what I mean by it is and again here we don't write on a blank slate. This court has said in its jurisprudence regarding bail pending appeal that a substantial question is one that's fairly debatable. My concept here is that a detainee would have the obligation to come forward with proof to to that that would be that that he or she is has a substantial basis to believe that he or she will never be deported. By the way statistically that's not a crazy claim as we set forth in our papers and as record here makes clear 41 percent of the people in the class that issue here actually made those applications and 50 percent of them had them granted. So something like 20 percent of the people if my math is right actually ultimately never get deported notwithstanding that they're held for years. But but what what this court and others do on bail pending appeal applications is take a look and see whether they have a a colorable basis, a substantial basis, a fairly debatable basis, a standard like that Judge Ambrose is the one that we have in mind. But as the question is still is as to what and as you recognized at the outset there are a couple different issues here. What one is is simply whether an alien falls into a category. Correct. Ultimate 16. And if that's what we're dealing with then you know perhaps the focus of our inquiry should be what what is the the right burden there? Is it something greater than preponderance? Is it clear and convincing? Is it is it probable cause? You're you're asking us to sweep in other other forms of relief that assume that there is already been a determination about where we now have in in the picture cases like Barton v. Barr and our our opinion of Khan. Don't don't we have instruction from the Supreme Court that things like inadmissible by reason of having committed an offense or deportable is simply a status. And and so the Congress and the Supreme Court in DeMoore arguably have already decided which is if you fall into that category there's an irrebuttable presumption that arises. Respectfully your honor I I'm not so sure that Congress decided that but if they did impose that irrebuttable presumption then that would be unconstitutional. But having said that you're quite right that we don't really assist the court that much in terms of saying what the standard ought to be. We say two things in our papers here and it's our position. First of all that the burden should be on the on the government to prove that one belongs in the category of of of offenses that that give right of in the category of people that belong in the mandatory. But your but your proposed test puts all it does is talk about the detainee. What burden is what burden should be on the government by the way? The burden well the burden on the government should bear the burden of showing and be and we think the standard of probable cause is too low. I would be respectfully think that a standard of at least a preponderance would be required that a person belongs in the category of people who are subjects mandatory detention. This is important because in some of these areas things like crimes involving moral turpitude or aggravated felony are often the subject of are real questions that arise as as to whether someone belongs in that category or doesn't and as to whether offenses belong in that category or didn't. In this case in our case of one of our named plaintiffs it was a significant issue and ultimately the court concluded this court concluded that that that Mr. Suku's offense was not a crime involving moral turpitude. But the government should bear the burden if somebody's going to be deprived of their liberty of showing that in the very first instance. But even if they successfully do it are I really want to focus the court if at all possible on the question which I especially think was not at all decided by DeMoor as to whether once you're in that category you necessarily have to be held without even a bond hearing at which you could show that you are not a risk of flight or a danger to the community because you are likely never to be deported as opposed to sitting in prison for months or even years without having that opportunity. So so that that that issue that you're focusing on you you don't take issue with the with the government's reading of the statute that says that's the outcome under the statute you're just saying that that statute is not it's not constitutional and by the due process principle right that that is the reading of the we do take the position that the statute is ambiguous and that the principles of constitutional avoidance should counsel a reading that would be clearly constitutional. There's you know there's good arguments for the ambiguity of the statute. The government itself concedes that the word deportable is used in more than one way in the statute and we point the court to for example and I'll get the specific provision but the the the provision of the statute that I think it's 1147 a yes I'm sorry 1101 a 47 which equates deportable with entering an order of deportation. We believe that this is a portable unambiguously mean that non-citizens are subject to removal. Look I mean I don't want to really press here today the ambiguity argument as much as we do in our brief I do think that there's a good argument that there's some confusion as to that that Congress knows how to say irrespective of any relief from removal there's a common sense Judge Ambrose interpretation of the idea that one is not removable or deportable unless they're not if they're not going to be deported um and and and by the way even in DeMoore uh it the notion of deportability is is defined in terms of the quote from DeMoore successful removal from the country so I think that there's an argument that it's that it's ambiguous but our main argument today is that even if it's to to Judge Fipp's point is that even if we were to concede that the statute is clear in that point that renders the statute constitutionally vulnerable um indeed I think it's really you know it outrageous that somebody could be held for such a long time even though it could be ascertained from the outset that they will never have to leave the country although on that point in terms of time unreasonably uh long time doesn't German Santos deal with that well what German what German Santos says and what the cases regarding length of time say is that there there does come a time when a uh when when detention is too long to be constitutionally appropriate um but that's a long time so what we could be talking about is for months and months even before you reach the point at which the at which the detention is at the outset that that was not what was likely to happen um and the notion that somebody can't even make that showing and then can't proceed to a bond hearing where they can show that they are not a risk of flight or danger to the community which is by the way what Congress was really worried about when it passed this when it passed IRA at the time um is it is is to me something that that should be taken into account in determining whether the procedures are adequate one fact question before and maybe you won't know this before we move on to uh another issue that you brought up which is the contemporaneous record whether it needs to be made of their uh in order to comply with due process of the 41 percent of challenge removal do you know how many are in the first category that is their their they are or are not subject to 1226 c and how many are in the discretionary category in other words they get discretionary relief no these are those are the numbers for as I understand it and I will check this and be happy to provide something to the court to to to confirm but I believe that the record is pretty clear that those are all people in category c those are all mandatory detention cases and not 1226 a cases um do my colleagues have any further questions on the on the on this first issue before we switch gears just to clarify I I'm not to um put words in his mouth but I understood Judge Ambrose's question not to go to 1226 a versus c but in the category of 1226 c c correct how many of those were uh with into the category at the first step versus whether they had a a an argument for for relief from uh removal thank you for thank you for translating Judge Ambrose for me I apologize Judge Ambrose no no no problem um so um the all 41 percent well every one of those people are people who who applied for discretionary relief under one of three provisions either for cancellation for adjustment or for asylum all of them fall into that category so all of them were people who fell within the category of people who may be mandatorily detained but ultimately nonetheless were not deported and and and um I would refer the court to the to the we had uh on Sunday judgment there were um there was there were pleadings and I can give the court the appendix site to that um this was that was an undisputed set of facts and Mr. Rothberg not none of those were um for example challenging whether it was a categorical match whether it was an offense that uh that rendered them inadmissible or removable well they may have had those challenges as well but but those statistics um control for that that is those statistics for the people who had already been held by the immigration court to fall within the category they were already category c people who were being held under category c that they that they had committed either a crime of moral turpitude or a or a aggravated felony um and so now they were applying for the discretionary relief um but all of them did fall within the category of people who were quote-unquote deportable as Judge Phipps was using the phrase earlier before we went to records could I I just um step back to an answer you gave previously about uh that you think if we were if we were looking even at the first step that is category uh that the standard should be at least um preponderance um just should should we understand from that you're not advocating a clear and convincing standard we I will tell you we have not um we have not done that we have not advocated a clear and convincing standard of course I would be thrilled to be clear and convincing standard I think it's justifiable um I think this look we all know that both burdens and standards of proof depend upon the interests involved and when you're talking about something as serious as detention I think a clear and convincing standard is would be appropriate and by the way I should note that in most of these cases and maybe this is the segue to records anyway I mean in in the vast majority of these cases there's no real dispute after that it's really simply a matter of looking at what the conviction was and applying the law that that fact the law to that fact um so I'm not sure that the standard actually applies but you know in a in a in a real but there are at times disputed facts um there are times when both a a detainee testifies and government officials testify obviously we think a record should be made of that so so courts can exercise a meaningful appellate review um but um but but in any event um yes I mean I think a clear convincing standard would be would absolutely be appropriate given the interests involved but but I will I will I have to you know obviously in candor to the court we didn't brief that issue well why don't you turn to the contemporary contemporaneous record what is your understanding of the record that's currently kept at Joseph Hearings there notwithstanding that there's recording equipment in the courtrooms the pretty extraordinary deposition in this case where we actually deposed the head of the the chief immigration judge for the district who testified that that's what they do um instead there's so there was no contemporaneous record made instead um there's simply a a a sheet with with boxes that are checked and that's the full record that makes its way up to the to the board of immigration appeals so if the question is whether whether an alien has committed an aggravated felony I mean isn't isn't the sheet pretty good I mean you check a box and say yeah I mean I mean that's not not too many facts not not not too many issues that are ever going to be recorded do you need anything more than that box being checked that box being checked probably gives you just about anything you ever or not check gives you just about anything you need for later now there might be other instances where you could say gee it's fact dependent or something else like that's in play but it strikes me that there's at least some instances oh yeah where the box is sufficient on its own for the record there are some instances your honor but um but the two quick observations on that first of all the fact that there are some instances where the facts are not really disputed um doesn't mean that there shouldn't be an opportunity to dispute them when there are disputes and let me just give you an example of a case that I'm involved in now and then this is not part of the record I apologize for that but I mean it does happen that there's a dispute in the aggravated felony context about whether there was there was a there was ten thousand dollars involved because that's the threshold for aggravated felony and so so there so so and and there'll be this there will be testimony as to whether the offense did or did not involve ten thousand dollars for example um the concern here and this is the second point I wanted to make and we we make this point in our in our briefs is that there are times when immigration judges do not give the parties an adequate opportunity to argue those facts or to present them we this court has reversed a number of of BIA decisions based upon pretty pretty significant misconduct on the part of immigration judges misconduct that would not come to light were not for the fact that in those cases but they were in a different setting um there was a full record made um this issue really has to do with the ability of this court and other and the BIA which reviews the determinations in the first instance to do their job um I can't imagine but but isn't but isn't isn't the release that you seek over inclusive I mean there's some instances where a recording where a paper record is sufficient and so then the release that you seek is to kind of mandatorily compel recording in all instances including those in which a paper record is sufficient I mean it strikes me that there would be kind of smaller steps along the way where you could say a a person in a joseph hearing an alien in the joseph hearing has the option to request recording and they must be given that option as opposed to saying every single one of these must be as a matter of constitutionalism I mean that that strikes me as a very over inclusive rule of con law why why why aren't there smaller kind of more more bite-sized approaches to con law that you could present instead of kind of asking for the whole con law mouthful yeah um I I I think I think you're right that there are smaller steps that could be taken in some cases but think about this in this way um what we know is that if that is that if you had a transcript in every case then you know that could easily take care of what's otherwise on a piece of paper the judge could say it would be a two-page transcript where the judge would say I find this this this and this and there's no dispute and you would have a record of it the flip side that is to say what's on the sheet of paper could easily can be converted to the transcript but the but the converse is not true that is if you if all you allow is a piece of paper then you're never going to have what would otherwise be in the records I understand that but as a point of con law why is the rule that the transcript is mandatory why not just give the the alien and the judge securing the option of recording it why not just say hey we can record this if you want I mean I mean that's that's what happens at a lot of district court proceedings I know that that's that's oceans away by analogy but but but court said you want this on the record or not why why isn't that enough under this very flexible due process standard to say look we gave you the option you elected for it or you you chose against it if you chose against it it due process at least in this context strikes me as subject to an alien election there are certain con law rights that you can elect out of why isn't this one of those as opposed to being mandatory for all times all places in an over inclusive way I understand your point your honor and I certainly think giving detainees under those circumstance the option is far better than the regime we have today where they do not have that option where it simply is never done so and it may in some subset of cases be constitutionally adequate I would respectfully suggest that it's probably a better course to not leave that up to an uncounseled detainee and and a judge but rather just the have a blanket rule particularly where it's so easy and by the way it's become easier today where these proceedings are being done typically remotely anyway so the equipment is there there's really no excuse to not it's in some ways that the most administrable simplest way is just to record the proceedings the way the way proceedings are recorded in courtrooms all around the country every day it may be right from a practical perspective but I think Judge Tripp's question is how can it be unconstitutional to give the option of recording to the detainee yes so so it may be that that this is the sort of thing that is is best decided as applied to a particular case I think that the the better course is for this court to provide some guidance as to what's what's required if if the if the if the answer is that there can be a knowing involuntary waiver Judge Tripp you correctly suggest that this constitutional rights are knowingly involuntarily waived every time but respectfully I think that you know if you talk about opening a pandora's box the pandora's box is that's going to be open is you know did it did detainee knowingly involuntarily waive the right to have a transcript made it just it's it's it's simply a matter of pushing a button and it seems to me the easier and better way to do it but but I would agree with you that that would be a that would be a step in the right direction it seems that in making that sort of choice for it to be knowing involuntary it would be necessary to know how the decision was going to be rendered and what the decision was going to be what the is there is there any sort of preview of that or or announcement of that before an actual hearing and decision is rendered so that in deciding whether to record it or not the non-citizen would be able to to knowingly waive the right to record it um candidly your honor I don't know the answer to that question I don't practice regularly in suspect based upon the little I do know that the answer to that question is yes sometimes and and and no other times that sometimes somebody really does have a pretty good idea of what's going to happen and sometimes it's hotly disputed um but I but but honestly I would I I don't know the answer maybe that Mr. Sompot has knows that that answer that question better than I do and do you know the percentage of those that are pro se cases versus counsel I don't I don't know the I don't I do know that the vast majority are pro se but I but I don't know that exact percentage is and that was not part of the record here unfortunately could I just get back to a couple questions on the on the standard um you've asked us to espouse the uh dissent in uh demore what about the dissent in on the merits standard um and I have no real quarrel with um a likelihood of success on the merit standard um it's a it's a somewhat higher standard um I think um than a substantial argument standard and I have espoused the substantial argument standard because that standard was approved by the Supreme Court as part of its ruling in Salerno that detention could be constitutional um so that's why we chose that standard to be to be clear but um my main argument is that there has to be some opportunity as a matter of procedural due process for a detainee to show that he's unlikely to be deported I think a substantial the substantial argument standard is one that has finds justification in um more directly analogous um in more directly analogous statutory framework and one that has been the subject of constitutional adjudication um but to be to be honest I would not quarrel very much with the likelihood of success on the merit standard which is what's proposed in the Joseph dissent do you understand that likelihood of success on the merits to be going to both discretionary relief and uh the applicability of the particular categories or just the former I'm sorry just just the just the categories yeah fair enough I mean so in in um in in Joseph they were not dealing with the issue of um of of whether one could raise questions of the likelihood of obtaining discretionary relief so you're correct that was really just going to the question about whether someone belonged in the 236c category um so you're right that they weren't really addressing that since then decisions of the BIA have made clear that the question of discretionary relief has no plays no role whatsoever in these in Joseph hearings any further questions okay thank you thank you your honor and thank you for hearing us remotely I would appreciate it very welcome uh Mr. Sampat good morning your honor and may it please the court German Sampat from the United States Department of Justice and the government neither the statutory language the statutory construction nor the constitution creates the exception that class council provides to be included for individuals that are going to be included in 1226c as Judge Kress pointed out the Supreme Court has addressed this uh three times already and excuse me into more Jennings and and pre-op so you know the government respectfully requests that the that this court affirmed the district court's decision regarding the interpretation and on burden allocation you rely heavily on the more of it back then it was the understanding that the delays were in the neighborhood of five months and then as you know in 2016 the solicitor general's letter sent to the court showed that average detentions are 382 days a little more than a year so we're seeing appeals where people were mandatorily detained for over a year or more I mean Santo German Santos was more than that so doesn't that mean here that a liberty interest is now staring us in the face as being particularly compelling so there is a liberty interest but as as this court's recognized there that liberty interest can be addressed on the back end by having by having this right of habeas where individuals can challenge prolonged detention right so they're on this court I'm I'm sorry excuse me this court said in uh in Diop and Chavez and Chavez-Alvarez in both cases where individuals were were challenging their removability that the constitutionality of 12-2060 wasn't the issue it was a matter of whether or not as a matter of constitutionality their detention had become so prolonged such that a bond hearing was required so that is a protection a protection towards an alien liberty interest while they're in detention subject to mandatory detention even as it has uh seemingly approved some sort of categorical uh uh detention the court has also recognized that there is a showing to be made at the outset and has declined to opine to date on uh what what that burden is uh to decide whether someone is subject to 12-2060 um that's that's really the issue for us today and that you agree has not been addressed by the supreme court or our court yes yes we do concede that that has not addressed by by the third circuit nor by nor by the supreme court but to address the burden allocation argument probable cause has been is used across other areas of the law numerous times and the constitutionality of that has been has been upheld so so let let I'm sorry if I'm interrupting but has it has probable cause ever been used in an area where uh a person subject to probable cause is looking at a detention of 382 days um not that not that we're aware your honor and happy to do a little further research to see but because probable cause may work for many many many things but does it work for mandatory detention under 1226 c is the question here and and I guess you know I guess whatever the standard is you know one of the thoughts is one of the ways to challenge whether you're in 1226 c or whether you're in 1226 a is identity you could just say you've got or you've just got the wrong person and so whatever the minimal standard is shouldn't we be just confident that that standard makes sure that we aren't detaining the wrong person for 382 days and it's probable cause maybe it is is it a good enough standard to assure us that at the bare minimum we've got the right person yes your honor I think probable cause is the right standard because again the probable cause standard is for the government to show that this individual is subject to 1226 c it allows an alien to make the eventual uh to respond accordingly and say I'm either not an alien right I'm not the person as you as you noted judge pips or um I am uh I am I I am likely to prevail or or that I say substantially unlikely to prevail on the account of I am subject to mandatory detention so the burden then goes back to the alien to show that I or this individual may not be subject to 1226 c again the joseph hearings are meant to be these preliminary custody determinations to simply determine whether or not to be subject to 1226 c and mandatory so so again I'm sorry for everything you know that's that's great that makes a lot of sense if the real hearing were the next day or the next week but but but I think the reality is maybe the real hearing isn't quite the next day or the next week and so that time period that's in play yes there's back-end remedies for that but those are back-end after detentions already happen and so you know I mean probable cause if you had to handicap probable cause on a percentage scale where do you put it is it somewhere between 33 and 40 percent 25 and 33 like roughly what is it it's probably under 50 right under 50 um I think it'd be a little difficult just because again probable cause would depend on different circumstances and different individuals but so I guess let's just say it's 40 percent so so we could have an identity issue and we could say you know we're going to detain this person for maybe 382 days because we have evidence at about 40 percent confidence rate that this is the right person and and you're saying that that that due process requires nothing more than that yes your honor because it's it's that we have the right person but again we're what the 30 percent confidence if it's the right person 50 percent you've got the wrong person right you've got the wrong person but 40 percent you've got the right person and so if it gets too long they'll be they'll be back-end remedies um but but but but those don't give you time back those are just kind of ways out right right but again for the alien it almost seems like the most prudent course at that point is to move to terminate proceedings not so much to argue about whether or not they're subject to 1226c right and and that's that's on that's on that's a burden on the alien themselves because again I think it would be I think it would be a little weird for for somebody to file and argue about detention and whether they're not subject or whether or not excuse me they're subject to mandatory detention when their argument is we're not this individual at that point why not file a motion to terminate proceedings and say I'm not this person immigration judge please just let me out of custody and have the immigration make that determination right there but even if they do that that that may be months uh even more than a year away um I'm sorry Judge Cress when you say a month or a few months or a year away you mean the determination on the motion to terminate yes um it may it may be some time away again but you know courts you know immigration courts are have a little bit of a backlog as as the court has noted and and recognized but this all excuse me this all goes to the fact of what 1226c was was meant for when it was passed by congress which was to address a to address the evidence it had before it of individuals that were absconding at high rates that were being released and then going out and and having high crime or high crime rates and failing to appear for their removals ultimately so the point of 1226c would be undermined if if the immigration if the government was not able to make this threshold determination at the beginning that somebody is subject to 1226c and and then move forward from that but but that doesn't doesn't that just uh that that seems to prove too much because if if the concerns are the risk of flight and uh and potential danger that follows from someone properly being categorized in 1226c then if there is proof that they do not belong in that category whether as a categorical matter or because of discretionary relief then don't those those two drivers of risk of flight and danger don't they decrease accordingly they they may decrease but again as this course recognized through diop chavez alvarez and then now erman santos which is that that determination is made for the later end as to whether or not the purpose of 1226c is being met so so an alien can then file after six months and a habeas petition in district court saying that i have i have been litigating my removal in good faith and therefore now my my detention my prolonged detention as a matter of constitutionality is questionable and therefore i request a bond hearing before an immigration judge so let's say let's say that we um we we uh conclude that there needs to be more scrutiny at the front end as to uh whether 1226c is is applicable um what is your position as to uh who bears the burden and what this that standard of being uh we do use probable cause in many circumstances but um typically there is some kind of burden shifting with a recognition that ultimately it's the government that has the burden of persuasion and it's by clear and convincing evidence here you're asking us to accept the statute as including an irrebuttable presumption at least at the outset to trigger that irrebuttable presumption doesn't it need to be something more than probable cause um respectfully your honor the government doesn't think so we think the probable cause um standard is appropriate and meets constitutional muster but should the court addressing your point of you know assuming that the court says that different standards required i think i think it would be a an issue that would probably need to be further briefed because both is that there's no real alternative that was proposed in their briefing and the government never had an opportunity to respond now preponderance may may make sense but again this would be something that would probably be better addressed with with additional briefing on that so so if the standard were preponderance just more likely than not you you would have a stronger case right you could say look this is this is much much more defensible we we we've at the front end that it's more likely than not that this person falls into the mandatory detainable section that that that's that's a better argument than we have probable cause and you might have probable cause to to you know start the process but but but once you want to to continue the process with a detention seems that your argument would be a lot stronger if you this is this is this is more likely than not that's more defensible than probable cause probable cause is is asking for a lot isn't it well i would just ask if you could clarify what you mean when you said probable cause on the front end would be okay but then after that would not because you know on the very very kind of on the reason to believe on what it takes to even start a detention hearing right to even start this process down the road before a joseph hearing even takes place there has to be some showing the question is what needs to take place at the joseph hearing and so i can see probable cause having a role before a joseph hearing if you now understand go ahead and respond yeah so so i i think i think the response to that though is that the joseph hearing is that threshold hearing right and and that an individual is so so my question is what's the initial threshold for taking someone into custody i i understand that to be almost like reason to believe or you can't just indiscriminately take someone into custody there has to be some showing there it's somewhere between reason to believe and probable cause and then the question is what's the standard at the joseph hearing which you would expect would be a slightly elevated standard from the initial standard that's that's what i'm getting okay um again i think for a joseph hearing the right these are preliminary hearings where we don't want to get bogged down or it doesn't make much sense it wouldn't be prudent frankly to get bogged down in whether or not somebody has a substantial challenge or or something to their to whether or not they're subject to 1226c because it would turn into these mini hearings where an immigration judge would have to make a determination as to whether or not someone is likely or may not be likely to get some form of relief so the probable cause standard addresses that by saying is this individual subject to 1226c just to borrow the court's example is the government 40 sure that the individual subject to 1226c because it either is the individual that subject to mandatory detention or is substantially unlikely to prove that they're not allows the government to again make that determination and and say this is the individual that is going to be detained and should that individual's detention become so prolonged they can then file a habeas petition in district court to see uh to see but do we do we even need a joseph hearing i mean isn't isn't that probable cause standard met simply when i decides to issue a notice of removal why why isn't why don't we just take that that's that's based on a probable cause uh to believe the notice of removal is warranted for whatever charges are put in it uh and um why do we need uh at that point there to be any further hearing um before the actual removal hearing um well i i said clear i think i think due process would require that hearing to to have some review of of whether or not somebody's subject to mandatory detention but you're saying it's at the stand it's the same standard that was already applied and already deemed satisfied by the agency but there's but there's now a neutral arbiter to determine whether or not the dhs or was proper in in applying that standard to this specific individual right so an immigration judge then so more due process happens not necessarily by ratcheting up the standard but by having a neutral arbiter an opportunity to be heard and make your case and i guess that's meaningful the extent that that a person detained can say the probable cause is lacking whereas they don't get to make those same arguments to ice agents who are executing a detainer yes correct your honor once that showing is made the government's position is that at that point the the government has no further burden the government's burden in terms of what it must show is the same as what i needed to show to issue a notice of removal yes at that point your honor it is the probable cause standard for the government to show and then which is rebuttable again by the alien to whether that they are not the alien or they're uh that the uh that the government is substantially unlikely to prevail on the fact that the individual subject to military detention what what distinguishes this situation from uh it's a uh addington um civil commitment context where we require a clear and convincing uh standard to be satisfied before someone can be uh detained for a prolonged period the burden being on the government to make that showing not on the proposed detainee well your honor as the supreme court has held numerous time and as this court has recognized as well removal proceedings and removal proceedings in the immigration context are not subject to the same sort of due process protections that those other protections available to individuals in this arena and that that is the way that congress has had created the statute and had has operated by passing different uh different provisions of the ina that that may be true when it comes to the removal uh the removal hearing but again we're talking about what you agreed at the outset with an open question about what the threshold uh showing needs to be to trigger that mandatory detention and why shouldn't that why shouldn't that be a burden um on the government uh rather than the detainee um and uh and why when we're dealing with um a sort of mandatory detention scheme why why shouldn't we look to the other standard um respectfully or i think for that again immigration proceedings are fundamentally different and when it comes to detaining aliens subject to mandatory detention what congress intended in passing in passing 12-26c was to protect against individuals being released and then going out and absconding failing to appear for removals so the probable cause standard as as it currently exists properly reflects what congress's intent was when it passed 12-26 in ensuring that these individuals would be detained for because they because again they are subject to mandatory detention for some enumerated offense that they have committed or been convicted of can i pivot to the camp i don't know if my colleagues are up for this but can i pivot to the to the mandatory recording issue you put the words out of my mouth all right okay so i mean i guess my thought is why what's you know why isn't some at least option to record in in the in maybe not in every case but why why not giving a person facing this type of opportunity bird we've already given them extra process as you've said we've got a neutral arbiter an opportunity for her we have no contemporaneous record so kind of is is as procedure is given out under the constitution why what's why doesn't the constitution also suggest that in this matthews v eldridge balancing flexible test that we at least give a person the option to record this especially if it's going to involve a dispute under your view a probable cause so there's a few answers to that but the first is that the recording is really much really sort of inconsequential your honor because most of these joseph hearings are review are turn on legal questions as to whether or not the whether or not the conviction makes so so let's say let's say most of them do let's say most of it's check the box aggravated felony or not okay let's look okay let's say most of them do but but but but what about what about the ones where it's identity or or cancellation or adjustment or or or something else or you're a u.s or you claim you're a u.s citizen for example yeah i mean well so so i mean in those that that's different than whether you know second degree robbery in new jersey is an aggravated felony right and so so so that i don't know that i mean that's just a question of law but but but you know your brief says facial challenges but there's also factual challenges and sometimes they may bring a factual challenge and say hey the factual record actually matters to me here because i want to tell you that it's my cousin that you're after not me and we have the same name so so the two responses to that are first the aliens not deprived of their opportunity to present those facts in which they can do via affidavit and and declarations and other written documents that can be presented at the joseph hearing and the second thing is that an alien can request that the that the hearing be recorded and but it is left to the immigration judge to decide whether or not it's warranted there are times where an immigration judge may record it you know it is possible but the question here is whether or not as a matter of constitutionality one a recording is required at all times and judge phipps as you as you acknowledged during mr lustford's time you know it seems to be an overreach to say that's what the constitution requires so it's not that an individual is deprived of the opportunity to to ask for a recording they may ask they may request one if needed or if they would like but it's left to the immigration judge in his or her discretion to determine whether one is warranted or not so so so if we get if we get to the the other question i think uh judge krauss and mr lustford were talking about well if we this is kind of how do you know question well if we don't record it how do we know if a question was ever made i mean this is kind of feels like philosophy to me a little bit you know but but at one level if we if we don't ever record it how do we know i mean maybe we can just it may be just a form afterwards says no request was made to record and maybe that's good and then the question can do what you say no knowing voluntary intelligent request was made don't you i mean i mean how much do you have to put on the box and and and where do we go if it if it's a waiver and if it's not a waiver that means that there's no right and so i guess if we find there's no right then there's there's no need for a waiver it was just an option that was made out of just you know the beneficence of the uh neutral at the at the joseph here it was more than the constitution allowed and so maybe there's not a need for a waiver but but how do we know if there's not some according we just we're just going to accept the the paper record afterwards well yes your honor in the sense of you know it's an immigration judge who prepares a bond memo just to talk about that outlines what happened at the hearing and then and then we'll write it into a decision if that decision is then appealed but again this is no different than if than any other civil appeal right in the sense that if if a if parties submit a summary judgment motion in district court and there's a hearing that decision is reviewed based on the decision in order that the district court reviewed the orders not on not on what happened at the hearing correct so so it would it's similar in that vein where and almost really analogous to say those recordings are not required there there shouldn't be one required here but again this you know this court has said on a couple of occasions that a verbatim transcript is not even required for in the in the criminal context um it said that in saunders uh it said that in fahey and it said that in crutchley that you know there is no verbatim transcript needed as a matter of due process when an individual has a criminal trial or criminal hearing what's your justification for just for not keeping an audio recording recording of joseph hearings wouldn't it be easier or less burdensome as opposed to doing a post hearing memo um well your honor it's the argument here is a matter of what the constitution requires and the government's position is that the constitution does not require a a recording of of uh of those hearings now there is also the issue of there are two separate um i guess i guess the way to analogize it our server um that would that hold removal proceedings and bond uh bond proceeding separately because the statute requires that so you know it would be a matter of how those are stored and and of that such and again this was not necessarily uh briefed by the parties uh and this is not briefed by the parties but it's a matter the government's argument here is that just a matter of constitutionality a recording is not is there witness testimony joseph hearings i'm sorry your honor you cut out can there be witness testimony at joseph hearings um potentially but most of them most of them really do turn on conviction documents as to whether or not somebody committed this picture convicted or was convicted of this what that crime was and whether or not that makes them subject to mandatory detention that's how uh that that is my understanding of how most of these joseph hearings move forward mr said that didn't your own witness at uh at joint appendix 4 17 18 and 4 25 say that detainees sometimes testify at joseph hearings and that that testimony uh was relevant to to be made and testimony that is given uh at least by the detainee if not other witnesses doesn't that counsel in favor of having some record of what was actually said it does your honor but it doesn't need to be a contemporaneous record again the immigration judge is sitting there you know and preparing the bond memo is listening to the testimony and this memo that is then eventually turned into a written decision if appealed to uh to the bia so what is the burden on the government um in in terms of turning on the recording equipment um my understanding your honor is that there are two switches or buttons in the interview for lack of a better word or phrase um that require immigration judges to turn on uh to turn off removal proceedings um segment or server and then to turn on the bond hearing uh proceedings and to record it so the the burden on the government here that we're considering on the other side of the matthews task is is to flip two switches it that is my understanding your honor but again it's a matter of the burden on the government and the is the burden on the government is not dispositive of whether or not the constitution requires the hearing at the outset well on the other side i'm sure the government would not dispute that having a verbatim record facilitates appellate review um yes your honor i think we would concede that but again it's there's not much to be gained with the verbatim or contemporaneous record here because most of these hearings do turn on so on so so i mean i mean but but but but i mean a lot of this comes down to like law of averages like sometimes it may just turn on whether something's an aggravated felony sometimes it may involve a lot of witness testimony and a lot of facts and a lot of other things and so it seems that there's it seems that there's problems on both sides right because the problem that you face is not recording is a problem for the instances that aren't just is aggravated you know is this crime an aggravated felony that that's a problem on your side the problem on the class it's a b2 class and we have jennings interpreting walmart v dukes which says you have to give meaningful relief to every person in in connection with their grievance and if this class is everyone regardless of what sort of challenge they bring then there's this other problem of well what about the people who don't really have a due process trigger where the pure question of law may be addressed by a form afterwards versus the other set of people who are in the same class it may be really big cancellation adjustment identity issues and so it strikes me that that that both sides have a problem since this is a class that was an individual we might be able to look at one one individual case and say well in this individual circumstance more was required but in other cases i'm not sure more is required so isn't your strongest argument not that there are gaps but that jennings says that there has to be class-wide relief that remedies a injury that every class member has sustained um well yes your honor i think i think that that's part of the argument is that you know the class-wide relief that's granted has to benefit the entire class which is not necessarily the case here but you and but on top of that it's also a matter of immigration judges exercising certain discretionary authority to determine when those recordings are required and when not so that would be it's as you acknowledge your honor you know certain cases may require it where there is some factual record that needs to be developed and and needs to be properly recorded and for those circumstances an immigration judge can and sometimes do turn on the recording equipment to allow uh to allow them to have a contemporaneous recording of the hearing itself any further questions of my colleagues um do you agree that the right to appellate review is required by due process in this context in the context of of a joseph having review to a josephine yes there is a right to a review in that an individual subject to 1226 an immigration judge finding an individual subject to 1220 60 can then appeal it to the board of immigration appeals yes um and if i may or if can i just touch on one final point uh just for a minute uh on the 1252 f1 issue go ahead um in that uh the district court did uh exceed its jurisdictional authority by by granting injunctive relief um as this court uh acknowledged and it's the last time we were before the court um you know there were serious questions as to whether or not the district court may issue that injunctive relief so we the government would respectfully request that this court reverse could the could the district court grant class-wide declaratory relief instead of injunctive relief it could issue declaratory relief but i i i i would have to maybe class class-wide declaratory relief um um and but again the statute the statute was meant to allow the government to determine how best to comply with with such declarations made by different courts um so we would respectfully request that the court reverse the granting of the injunctive relief but uh affirm on the remainder of the decision and questions uh and decision in order so if there are no further questions i'd like to have just a couple quick last questions um again uh in in wrestling with um with the standard uh and you you mentioned um for a while ago that um in in almost all of these cases which really the issue is just a paper showing that someone has been uh convicted um it if if that's the case uh and it's that easy to show the at least the likelihood that someone falls into a april 26 c category um then what is the uh what is the problem for the government in terms of adopting um for example the joseph dissenters approach uh where the government uh has the burden to show uh a likelihood of success um as to that issue um if if all that's at stake in most cases is just putting in the paper showing proof of conviction your honor it's a matter of again it's a matter of what these hearings are meant to uh are meant to address and these hearings are meant for these preliminary determinations as to whether of custody determinations they're not meant to turn into you know as as we know in our brief many trials or many hearings as to whether or not somebody can or will be removed and and what it means to be subject to 12 2060 and whether it meets the categorical approach or or whatnot that so the probable cause standard is meant to address that and and to allow to not impose certain burdens on the government as the supreme court has recognized by turning these into these many hearings and many trials okay are we really free to um look to that after german santos within our circuit and to the extent that we've um we've already decided that a clear and convincing standard comes into play uh where and detention uh under 1226 c and is prolonged uh why why shouldn't we uh infer from that that that that is the appropriate standard for making the threshold determination at least whether someone falls within one of the 1226 c categories your honor there's nothing in german santos that that even that acknowledges or even notes that that the clear and convincing standard is a appropriate at the threshold determination again this court neither india nor chavez alrez nor german santos talked about or had any issue with an individual who is litigating the removability be subject to 1226 c did not raise any note that there was a question of constitutionality whether they were subject to 1226 c the german santos and really and it's and it's uh and its predecessors really talk about due process being instituted and due process protections that would kick in after detention has been prolonged so again this court has provided due process protections at the back end by saying that somebody subject to 1226 c may receive some form of relief which is in the form of release from detention or sorry in the in the form of a bond hearing before an immigration judge to challenge whether or not uh they should uh they should further be uh detained under mandatory detention thank you all right thank you and we'll get mr lesper back on rebuttal thank you very much your honor um you asked for what four minutes of rebuttals just just two but i'm going to be extremely brief because you all have been we'll give you we'll give you four and it'll be a hard four it's it's no problem i'll be quicker um the court has been very generous with time the one issue i did not address um on uh initially was the 1251 f1 um issue um which has to do with whether um the the injunction that was issued here was appropriate um under the statute and and let me just say i think when the court looks at that issue it should consider very carefully whether that issue was even preserved for appeal um it is act so so 1251 f1 was the initially i think did cross appeal and ultimately dropped their cross appeal so their effort today to achieve the the vacation of the injunction is inappropriate it's been waived it's not before the court their response to that is that it's jurisdictional but i would respectfully um refer the court to justice scalia's opinion in steel company versus citizens for better environment where what justice scalia says is you know courts use this word jurisdiction all the time but if you look at 1251 f1 just like in steel co the particular provision is called refers to limitations on relief it uses the phrase jurisdiction in the text of the statute but it really has to do with limitations on relief and as such if the government was concerned that the and to maintain and to have maintained that appeal um having said all that as this court made clear in the footnote upon which the government relies the first time around in your opinion judge kraus um that under under what's pre-op says this now but under ali at the time it's it's very clear that declaratory relief um declared in class-wide declaratory relief um as you said judge ambrose is appropriate even under that statute we set forth our position um in our but but um the government has determined not to cross appeal on that i'll conclude with this and i do really appreciate the amount of time that the court has given to this matter which is very important you know um the government argues in response to judge kraus's questions that the due process um cases to which to which your honors refer are not applicable here because we're in the immigration context one of the most remarkable things about the government's papers in this case is its complete failure or refusal to acknowledge that vitus which does not say that what that vita says and even what the more says is that the dupe is that due process does apply in these contexts and that due process should be limited to where we're talking about detention to very specifically identifiable circumstances that's what said vita says um that are linked um really as mr sanpat says to the purposes of the statute and we agree with mr sanpat as to what those purposes were the purposes were to prevent um flight in danger to the community um the the the regime that we've proposed is one that would do that um it would just simply not would not detain people for as the court pointed out on the average more than a year um when ultimately they will they would not be detained um and it will give them full the full range of due process protections much greater than probable cause which is on the very low end of standards of proof in our system of justice um so that so that courts can be assured that those who are detained really ought to be um that's what this appeal is fundamentally about and i really um want to thank the court again for the time that it gave to us this morning and throughout of course i'm available to answer any questions but i i don't want to i don't want to overstate my welcome no thank you to both counsel very well presented arguments um mr lesberg did your firm take this pro bono yes of course yes thank you very much for for the exceptional work you you do and thanks to the government for the exceptional work that it does the uh we would ask that a transcript be prepared of this oral argument and if it's okay with mr sanpat would the government be willing to pick that up so yeah yeah sure all right thank you very much thank you both for being with us thank you thank you and uh let me just echo mr losberg's uh acknowledgement and thanks for taking the time with the argument important stuff and well well brief and well argued thank you thank you